# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES FRANK SINCLAIR, JR.,**

              **Plaintiff,**

-vs-                             Case No.  2:12-cv-44-FtM-JES-DNF

**MICHAEL ASTRUE, Commissioner of
Social Security,**

              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO:    UNITED STATES DISTRICT COURT**

      Plaintiff, James Frank Sinclair, Jr., seeks judicial review of the final decision of

the Commissioner of Social Security Administration denying his claim for Disability

and Disability Insurance Benefits. The Commissioner filed the Transcript of the

proceedings (hereinafter referred to as "Tr." followed by the appropriate page number),

and the parties filed legal memoranda in support of their positions. For the reasons set

out herein, it is respectfully recommended that  the decision of the Commissioner be

**AFFIRMED**  pursuant to § 42 U.S.C. 405(g) of the Social Security Act.

## I.  SOCIAL SECURITY ACT ELIGIBILITY, PROCEDURAL HISTORY AND STANDARD OF REVIEW

### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

### B.  Procedural History

On August 7, 2008, the Plaintiff filed an application for a period of  Disability and Disability Insurance Benefits ("DIB"), alleging disability beginning January 5, 1994[1]. [Tr. 27]. The  agency denied the Plaintiff's claim initially on February 16, 2009, and upon reconsideration on June 3, 2009. [Tr. 24].  A Request for Hearing was timely filed on June 30, 2009. Administrative Law Judge ("ALJ") Jose G. Rolon-Rivera held four separate hearings (May 28, 2010, October 26, 2010, April 14, 2011, and June 15, 2011, in Ft. Lauderdale, Florida). The ALJ's decision, dated June 23, 2011, denied Plaintiff's request for disability and disability insurance benefits  [Tr. 24-37]. The Appeals Council denied

---

[1] Plaintiff originally applied for social security disability benefits when he became disabled in 1991. That claim was denied.  Plaintiff was unaware that he could have appealed that decision; consequently he never appealed.  The denial date was January 4, 1994.  That is why Plaintiff's new application bears the date of his disability commencing on January 5, 1994 [Tr. 28-29].

Plaintiff's Request for Review on December 8, 2011. [Tr. 1-7].  Plaintiff appeals pursuant to 42 U.S.C. §405(g).

The ALJ determined in his decision that this case is fifteen (15) years old and thus the relevant time period under which he considered the evidence is the time period comprised of one year prior to January 5, 1994 (date of application) through December 31, 1995 [Tr. 80] his date last insured.  Although Plaintiff may have received further injuries or developed other impairments since December 31, 1995, those impairments were not within the area of consideration for the decision.  The decision is only based on the medical and other evidence for the time period in question [Tr. 29].

### C.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997))."Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)).

-3-

However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work.  If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *see also Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).

Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

## I.    REVIEW OF FACTS

### A.    Background Facts

Plaintiff was 44 years of age on the date his insured status expired on December 31, 1995. The Plaintiff was born on February 13, 1950 [Tr. 34]**.** Plaintiff has a college degree and past relevant work experience as an automobile service  manager [Tr. 36, 37].

The ALJ found Plaintiff had the following severe impairments: anxiety, ulcers, angina, obesity, hypertension and a history of lumbar laminectomy.  The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work that required no more than occasional climbing ramps, stairs, ladders, ropes, or scaffolds; and no more than frequent balancing, stooping, kneeling, crouching, and crawling [Tr. 28].

### B.    The ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1991, and that Plaintiff met the insured status requirement for the Social Security Act through December 31, 1995, his date last insured "DLI" [Tr. 36].  Plaintiff revealed in 1991 he "just snapped" due to pressure from his employer.  Plaintiff has been receiving monthly disability payments from his employer in the amount of $3,000 per month. Plaintiff also had his own disability policy prior to his "breakdown".  That policy provides $9,000 per month in disability.

-5-

At step two, the ALJ determined that, based on the medical record, Plaintiff had the following severe impairments: Anxiety, ulcers, angina, obesity, hypertension and a history of lumbar laminectomy.[Tr. 27].   Plaintiff advised he sees Dr. Abbey Strauss (psychiatrist) every other week for therapeutic treatment.  Plaintiff advised he has never been involuntarily hospitalized under the Baker Act, nor has he ever received any in-patient psychiatric mental health treatment.  The ALJ determined that although Plaintiff's alleged impairment could be expected to cause the alleged symptoms; the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment of "light" work (Tr. 29).

In the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 27].

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) with an occasional ability to climb, balance, stoop, kneel, crouch, or crawl. [Tr. 23]. The ALJ concluded that although Plaintiff may have had some restrictions, there was no sufficient evidence to preclude him from "all types and degrees of work activities." [Tr. 26]. The ALJ considered "all symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and . . . opinion evidence . . . ." [Tr. 23]. The ALJ considered all of the evidence and accorded the appropriate weight to the opinions of the State Agency and private physicians. [Tr. 27]. The ALJ  determined that through the date last

insured, Plaintiff was capable of performing his past relevant work as a manager of automotive services.

### C.    Medical Evidence

Plaintiff was seen by Dr. Abbey Strauss for anxiety disorder between September 1991 through April 1993.  During this time, Dr. Strauss completed many "Attending Physicians Statements of Disability".  Summarized,  these forms reveal that Dr. Strauss found Plaintiff to be suffering from General Anxiety Disorder, with psychological factors affecting his physical condition.  Non-mental medical diagnosis was hypertension.  The severity of Plaintiff's psychological stressors was rated as extreme with a notation: "could not tolerate work stress". Further, Plaintiff was found to have a "fair" overall level of adaptive functioning (Tr. 421-426).

On April 16, 1993, Dr. Strauss completed another disability form (Tr. 415-419).  Dr. Strauss advised Plaintiff had rapid heart rate, angina, and chest pain. Plaintiff was on Xanax and an anti-hypertensive. Dr. Strauss completed an anxiety related disorder questionnaire. Dr. Strauss found Plaintiff was experiencing signs and symptoms of: "persistent anxiety; motor tension, autonomic hyperactivity, apprehensive expectation and vigilance and scanning. He exhibited an irrational fear of objects, activity, or situation which resulted in a compelling desire to avoid the object activity or situation".  Plaintiff was found to have a disturbance of mood accompanied by a full or partial depressive syndrome, anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.

On July 8, 1993, Dr. Strauss wrote a letter to the Plaintiff.  The letter advised that Dr. Strauss had been informed that Plaintiff had been denied social security benefits and that it

was her opinion "that you should not return to an managerial position.  As I have described

elsewhere, and in considerable detail, to return to work as a manager or similar job would be

detrimental to your health.  It would be merely returning you to the situation you had to

leave" (Tr. 577).

On August 23, 1993, Dr. Robert Rosenthal, M.D., a cardiologist, wrote a letter to

Robert A. Shupack.  Dr. Rosenthal wrote that Plaintiff had been a patient since August of

1991.  Plaintiff was 41 yrs. old with a history of hypertension and 6 months of recurrent

episodes of chest discomfort.  Plaintiff had an echocardiogram which revealed mild

concentric left ventricular hypertrophy and a Thallium Stress Test suggested a small area of

inferior wall ischemia.  Dr. Rosenthal wrote " it was not quite clear originally whether, in

fact, we were dealing with true angina, some element of anxiety, or both".  Plaintiff was

placed on Sectral 200 mg. and Procardia-XL mg. qd..  Plaintiff did stop smoking.  A cardiac

catheterization on 10/23/92 revealed "mild mitral valve prolapse and basically normal

coronary arteries with no significant stenosis.  There was a mild to moderate ectasia of the

proximal and mid-left anterior descending artery".  Dr. Rosenthal continued with "we were

dealing with a condition called angina with normal coronaries or "Syndrome X".  This is a

condition in which people with normal coronary arteries can experience anginal like chest

pain".  Dr. Rosenthal advised Plaintiff "will continue to experience chest pain for the rest of

his life.  It is difficult to sort how much stress contributes to this condition.  Nonetheless,

clearly in a stressful environment, his symptoms tend to worsen.  His condition will require

ongoing monitoring and periodic examinations" (Tr. 575-576).

-8-

Plaintiff was seen by Dr. R. Bailyn, a neurologist,  between March 1994 through April 1994 for low back pain.  Office notes of April 7, 1994, reveal that Plaintiff reports persistent low back pain which extends down the left leg and into the surface of the foot.  Notes reveal: "The patient has not significantly improved with regard to lumbrosacral radiculopathy which is now clearly the result of L4-5 and L5-S1 disc herniation".  Plaintiff will be referred for epidural steroids.  Plaintiff was given a prescription for Percocet and advised to return for reassessment following the epidural (Tr. 541).

Office notes of  November 25, 1994, reveal that Plaintiff underwent a lumbar laminectomy on June 22, 1994, in Connecticut.  Plaintiff advised he had been pain free for about three to four weeks and the back pain returned.  Plaintiff advised of occasional numbness and paresthesis over the plantar surface of the left foot.  However, pain is not as intense as it was.  An MRI scan of the lumbar spine performed on September 2, 1994, showed "no significant disc abnormality.  Plaintiff begin chiropractic treatment with only partial improvement" (Tr. 540).

On December 16, 1994, Plaintiff underwent an EMG of the left lower extremity (Tr. 537-539). The study indicated mild, chronic L5 radiculopathy on the left.  In 1995, Plaintiff underwent physiotherapy due to pain (Tr. 536).

On March 3, 1995, Plaintiff reported occasional paresthesias of the left foot (Tr. 533). Plaintiff  had developed numbness and paresthesias of the entire right forearm that extended to all digits of the right hand.

Progress notes dated April 1995 demonstrated paresthesias over the plantar surface of the left foot and positive straight leg raising on the left (Tr. 532). Plaintiff had gradual improvement of L5 radiculopathy.

On May 12, 1995, Plaintiff reported low back pain that extended into the buttock. He had moderate restriction of flexion and extension of the lumbar region (Tr. 531).

In June and July 2005, records indicate Plaintiff experienced improvement in his low back pain in association with physiotherapy (Tr. 529).

On May 14, 2009, Gary Cater, D.O., completed a Physical Residual Functional Capacity Assessment as a State agency consulting physician.  Upon examination of the records from Plaintiff's June 2004 back surgery and treatment notes from Dr. Richard Bailyn, Dr. Carter wrote as follows: "SP Lumbar laminectomy, HTN, Obesity, AI, MR, ASHD without angina, no signs of cardiac failure, AP recommends that he increase his exercise level, no motor or neuro limitations noted at exam near "DLI" should have been capable of work consistent with this RFC".  Plaintiff can occasionally lift 20 lbs., frequently lift 10 lbs., stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour work day and unlimited push and/or pull abilities, i.e. except Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and, frequently balance, stoop, kneel, crouch, or crawl (Tr. 774-76)

On May 28, 2005, Dr. Abbey Strauss wrote a letter to Judge Eileen M. O'Conner, Broward County, Ft. Lauderdale, Florida.[2]  (Plaintiff was incarcerated and not dealing with

---

[2]       Plaintiff's brief refers to this letter as a form prepared by Dr. Strauss regarding Plaintiff's condition (Pl.'s brief, page 6).

his anxiety).  Dr. Strauss advised that her diagnosis for Plaintiff is "Generalized Anxiety

Disorder" and that over the years he had tried "combinations of medications, psychotherapy

and relation techniques to control his anxiety".  Further, that "at times alcohol would be the

means by which he managed the inner inventory of anxiety that otherwise found no release or

resolution".  Dr. Strauss advises Plaintiff is on Xanax, Prozac, Topamax and Ambien and that

if these medications were not available to him, his anxiety would create a medically

dangerous manner and his psychological steadiness would be destabilized".   Dr. Strauss

suggests to the court "to please direct him into the infirmary for the duration of his

incarceration" (Tr. 572-573).

In June 1995,  Dr. Richard Bailyn, Plaintiff's orthopedist, noted Plaintiff reported

continued improvement in his low back pain (Tr. 530). Plaintiff stated his pain no longer

extended into his buttocks or legs and he was no longer relying on pain medication (Tr. 530).

On examination, Dr. Bailyn noted Plaintiff had no spinal tenderness; his "[s]traight leg

raising is negative bilaterally;" and, he had no muscle weakness or reflex asymmetry in his

legs (Tr. 530). In July 2005, Dr. Bailyn noted Plaintiff "reported dramatic improvement in

low back pain in association with physiotherapy" (Tr. 529). Dr. Bailyn also noted Plaintiff

had an upcoming trip from Florida to Connecticut (Tr. 529).

Dr. Barton Jones, Ph.D., completed a Psychiatric Review Technique Form on

February 12, 2009, and signed a Disability Determination and Transmittal Form opining

Plaintiff did not meet or equal a listing as of December 31, 1995 (Tr. 175, 655-68). Dr.

Barton considered  Plaintiff's physical conditions in addition to his mental impairments (Tr.

667). The record contained evidence from Dr. Benovitz, Dr. Shosheim, and Dr. Barton that

Plaintiff did not have an impairment that met or equaled a listing (Tr. 85, 129, 175).

Dr. Peter Schosheim, an orthopedic non-examining medical expert, testified in this case at the request of the Commissioner at the hearing held on October 26, 2010 in Fort Lauderdale, Florida.  (Tr. 30, 127-33, 238-42).  Dr. Schosheim testified Plaintiff had back and leg pain that required surgical intervention on June 22, 1994 (Tr. 127-28, 427).  Dr. Schosheim noted that between "1994 and 1995, the Claimant's problems, although significant, would not lend itself to a listing with regard to 1.04A during that time period. The reason being is that the records are clear that the Claimant had no muscle weakness or atrophy of his legs, and had no sensory changes in those records at Hartwick Hospital" (Tr. 129).  Dr. Schosheim opined that Plaintiff's maximum "RFC" was "limited to sedentary work due to the severity of his back pain and his inability to walk and stand more than two hours in an eight hour day, as far back as 1994.  That being said, he was 46 years old at the time".  Further, Dr. Schosheim opined Plaintiff could never climb ladders, ropes or scaffolds but he could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl and frequently balance (Tr. 129, 131-32).

On May 19, 2010, Dr. Strauss appeared before a court reporter in Boca Raton, Florida to provide a sworn statement for the record.  Dr. Strauss opined that Plaintiff suffered from marked limitations in multiple areas of functioning. Dr. Strauss testified under oath that from September 1, 1991, to present, Plaintiff was unable to do full time competitive work, even low stress, because his condition was unpredictable and he could have good days and bad days. Dr. Strauss added that she was in a better position to define Plaintiff's mental status than a psychologist who had never examined Plaintiff.   Dr. Strauss stated Plaintiff had been

compliant with his medications but that "either they had side effects or they simply didn't

work for him". Dr. Strauss further testified Plaintiff's prognosis was "guarded if we can

control his stress levels. It will be okay, but he still needs to be in treatment if his stress

levels can be controlled, modified, reduce, or somehow – well, reduced would be the proper

word. He is not out of the woods. And he is running with the potential of serious

decompensation should the stress get too high. So his prognosis if we can keep him balanced

is okay. I don't think he'll ever be able to go back to work, though. I think that would throw

him into a stress pattern that would be out of control" (Tr. 818). The ALJ then concluded the

hearing.

## II.     SPECIFIC ISSUES AND CONCLUSIONS OF LAW

The Plaintiff raises three issues on appeal. As stated by Plaintiff, they are: (1) the ALJ

violated Plaintiff's due process rights by repeatedly blocking Plaintiff's counsel's attempt to

question the medical expert at the hearings held in his case, which resulted in prejudice to

Plaintiff; (2) the ALJ failed to articulate good cause in discrediting the treating opinion of Dr.

Strauss; (3) the ALJ erred in failing to either credit Dr. Benovitz's opinion as to Plaintiff's

limitations since 1994 or to at least inquire the onset date of Dr. Benovitz's opinion.  The

ALJ further erred in failing to explain why he was not limiting Plaintiff to sedentary work

based on Dr. Schosheim's opinion (Pl.'s brief, page 1).

A.      **THE ALJ DID NOT VIOLATE PLAINTIFF'S DUE
        PROCESS RIGHTS.**

Plaintiff argues his due process rights were violated by the ALJ's repeated blocking of

Plaintiff's counsel's attempt to question the medical expert at the hearings held in his case

(Pl.'s Brief, pgs. 7-8).   Plaintiff contends that applicable regulations provide that the ALJ

may ask a witness any questions material to the issues and "shall allow the parties or their

designated representative to do so." 20 C.F.R. § 404.950(e).

The fundamental requirement of due process is the opportunity to be heard "at a

meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976).  The ALJ "shall allow the parties or their designated representatives" to ask the

witnesses any questions material to the issues.  20 C.F.R. § 404.950(e).  "However, there

must be a showing of prejudice before it is found that the claimant's right to due process has

been violated to such a degree that the case must be remanded to the Secretary for further

development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).[3]

Plaintiff's argument is without merit as the ALJ did not prohibit Plaintiff from asking

material questions of the medical expert and Plaintiff failed to show prejudice.

Dr. Larry Benovitz, a psychiatrist, testified as a non-examining medical expert as to

whether Plaintiff had a mental impairment that met or equaled any of the listings of mental

impairments between January 5, 1994, and December 31, 1995 (Tr. 80-81).  Dr. Benovitz

testified the evidence of record was insufficient for him to conclude Plaintiff met or equaled a

mental impairment listing (Tr. 85).  Dr. Benovitz noted Plaintiff received psychiatric care

---

[3]      The Eleventh Circuit cautions that a reviewing court "should be guided by whether
         the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"

from Dr. Abbey Strauss during the relevant time period but found Dr. Strauss' treatment notes primarily reflected on Plaintiff's life events and not his symptoms, diagnosis, or treatment plan (Tr. 83-85, 566-71).

In addition, the ALJ permitted Plaintiff's counsel to examine Dr. Benovitz (Tr. 85). Plaintiff's counsel began by asking Dr. Benovitz whether all doctors take notes the same way (Tr. 86). The ALJ interrupted Plaintiff's counsel and reminded him that Dr. Benovitz's presence was limited to rendering an opinion on the medical record and to measure the record against the parameters of the mental health listings (Tr. 86). Plaintiff's counsel next asked about Dr. Benovitz's familiarity with the Social Security Rulings and Regulations (Tr. 87). The ALJ reminded counsel that Dr. Benovitz was a qualified expert in Social Security Disability evaluation (Tr. 88).

Next, Plaintiff's counsel asked Dr. Benovitz whether he agreed or disagreed with Dr. Strauss' May 19, 2010, sworn statement, wherein Dr. Strauss opined Plaintiff was disabled from January 6, 1994, due to an affective disorder and was therefore unable to perform any kind of full-time competitive work (Tr. 88, 796-820). Plaintiff's counsel also asked Dr. Benovitz whether Dr. Strauss was in a better position to bring to light "other things that are not supported by the objective evidence alone" (Tr. 89). The ALJ again reminded counsel that it was immaterial whether Dr. Benovitz agreed or disagreed with Dr. Strauss as Dr. Benovitz was there to render a medical opinion based on the evidence of record, not to opine on opinion evidence (Tr. 88).

The ALJ did not violate Plaintiff's due process rights and Plaintiff did not suffer prejudice from the ALJ's shaping the contours of Plaintiff's counsel's questions to Dr. Benovitz.  Dr. Benovitz appeared at the hearing to opine whether Plaintiff's mental impairment met or equaled a listing. Dr. Benovitz opined Plaintiff did not met or equal a listing (Tr. 85). The questions posed by Plaintiff's counsel to Dr. Benovitz that the ALJ denied was a proper use of the ALJ's authority as those questions were not material to whether Plaintiff met or equaled a listing. Indeed, the questions stopped by the ALJ involved irrelevant issues such as note taking techniques and whether Dr. Benovitz agreed with opinion evidence. Moreover, as noted above, substantial evidence in the record supports the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that equaled a listing (Tr. 28, Finding No. 4). For example, the record already contained testimony by an orthopedist that Plaintiff did not meet or equal a musculoskeletal listing (Tr. 129). As Plaintiff failed to show his questions disallowed by the ALJ were material, Plaintiff failed to prove the existence of evidentiary gaps resulting in "unfairness of 'clear prejudice'." *Graham* 129 F.3d at 1423.

**B.     SUBSTANTIAL EVIDENCE SUPPORTS THE WEIGHT THE ALJ GAVE THE OPINION EVIDENCE AND THE ALJ APPLIED THE PROPER LAW**

Plaintiff contends the ALJ did not give good reasons for giving Dr. Strauss' opinion less than great or controlling weight (Pl.'s Br. At 14).

-16-

The record shows the ALJ applied the proper legal standards in not giving Dr. Strauss' May 2010 opinion great or controlling weight (Tr. 32).   The ALJ noted medical expert, Dr. Benovitz, testified there was nothing in Dr. Strauss' records to support Dr. Strauss's sworn statement that Plaintiff met or equaled listing 12.04 (Tr. 27, 33, 99).   The ALJ noted Dr. Benovitz testified Dr. Strauss' treatment notes were primarily based on Plaintiff's subjective complaints, not objective medical findings (Tr. 33-34, 82-83).

The ALJ also noted Dr. Strauss' opinion was inconsistent with the medical opinions of the non-examining State agency psychologists (Tr. 34).   20 C.F.R. § 404.1527(d)(4) (noting more weight is given an opinion that is consistent with the record as a whole). State agency psychological consultants are experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i).   For example, the ALJ noted neither State agency psychological consultant, Dr. Barton Jones nor Dr. Linda O'Neil, opined Plaintiff even had an affective disorder (Tr. 31-32, 655-68, 782-95).

On February 12, 2009, Dr. Barton Jones reviewed the file and completed a Psychiatric Review Technique Form.  Dr. Jones opined Plaintiff had generalized anxiety disorder that was not severe (Tr. 655, 660). He opined Plaintiff had only mild restrictions of daily living; mild difficulties in maintaining social functioning and concentration, persistence, or pace; and, no episodes of decompensation, each of extended duration (Tr. 665).  Dr. Jones noted upon review of Plaintiff's record, "[Plaintiff's] mental condition, however, does not appear to have cause[d] more than mild limitations in his [activities of daily living], socialization or concentration, pace and persistence. His mental condition does not appear to prevent him from functioning in a workplace setting" (Tr. 667).

-17-

On May 31, 2009, Dr. Linda O'Neil completed a Psychiatric Review Technique

Form.  Similarly, Dr. O'Neil opined Plaintiff, as of December 31, 1995, his DLI, had an

anxiety disorder that caused only mild restrictions of daily living, and mild difficulties in

maintaining social functioning and concentration, persistence, or pace (Tr. 782-92). She

opined there was insufficient evidence to determine if Plaintiff had any episodes of

decompensation, each of extended duration (Tr. 792). Upon review of Plaintiff's record, Dr.

O'Neil remarked,

> "Evidence around DLI suggested meds were quite effective in controlling
> anxiety. Cl was described as intelligent, with good memory; no thought
> disorder. Concentration generally fine with some episodic issues depending on
> anxiety. Overall evidence generally supports initial decision. Anxiety as of
> DLI is confirmed, but there is little to suggest this was severe enough to
> preclude work activity. Psych: NS [Not Severe] (for DLI)" (Tr. 794).

The ALJ also reasoned that Plaintiff's activities of daily living reflected a greater functional

ability during the relevant time period than was reflected in Dr. Strauss' opinion (Tr. 35). The

ALJ noted Plaintiff testified his daily activities had changed very little since 1994 (Tr. 35,

119).  Plaintiff stated he gets up in the morning and cares for his dogs.  Plaintiff reads two

newspapers and watches the morning news.  Plaintiff related he lies in bed and naps and

prepares simple meals for himself.  The ALJ also asked Plaintiff the following: "Is it a fair

statement to say that, from this onset date that your alleging in 1994 through 2001, you were

actively doing boating, in your own way?"  A "On a periodic basis".  ALJ: "Really?"  A

"Right".  Plaintiff further testified that he sold his boat in 2000 and that he's been boating for

55 years (Tr. 116).

The ALJ noted that the operation of a boat requires substantial attention, concentration, understanding, remembering and carrying out complex functions, and substantial exercise of independent judgment, (which discounts Dr. Strauss' opinion that Plaintiff had marked or poor limitation in his ability to concentrate) (Tr. 811). Additionally, reading two newspapers a day also requires focus and concentration. Thus, the ALJ gave good reasons supported by the record for the weight he gave Dr. Strauss' opinion. Also there is other evidence in the record which goes against Dr. Strauss' extreme assessment of Plaintiff's function during the relevant time period (Tr. 796-820). For example, a State agency employee reported Plaintiff said,

> "[I]n 1993 he was engaged to a lady and that they spent a lot of time going on trips, sight seeing, traveling, etc. She also liked to decorate, so he helped put up pictures for her. In the evenings they would watch news and court programs for hours. They also had dinner together. She drank quite a bit and he himself also at that time apparently used alcohol. Their relationship broke up in 2001 (Tr. 332).

Also, in May 1995, Dr. Strauss stated Plaintiff's diagnosis was a "generalized anxiety disorder", not an "affective disorder", which was her May 2010 diagnosis.  Dr. Strauss' May 2010 opinion is unreliable.

Dr. Strauss' opinion that Plaintiff was unable to "do any kind of full-time competitive work" (Tr. 815-16) represents an opinion on an issue reserved for the Commissioner and was not entitled to controlling weight (Tr. 361).  The ALJ had the duty to determine whether Plaintiff was disabled, and, therefore, Dr. Strauss' opinion regarding the issue was not entitled to special significance or controlling weight.  The ALJ found Dr. Strauss' opinion

was not supported by her own treatment records and was inconsistent with the record as a

whole (Tr. 33-35).

C.    **THE ALJ ERRED IN FAILING TO CREDIT DR. BENOVITZ'S OPINION AS TO PLAINTIFF'S LIMITATIONS SINCE 1994 OR TO INQUIRE AS TO THE ONSET DATE OF HIS OPINION.**

On November 25, 2010, Dr. Benovitz opined Plaintiff from January 5, 1994, "through

the present," suffered from anxiety (Tr. 842). He further opined Plaintiff had mild restrictions

of activities of daily living; mild to moderate difficulties in maintaining social functioning;

moderate difficulties in maintaining concentration, persistence, or pace; and no repeated

episodes of decompensation (Tr. 843).

Dr. Benovitz cited Dr. Strauss' entire treatment records and Dr. Strauss' May 2010

sworn statement as support for his opinion (Tr. 842). Dr. Benovitz then opined  Plaintiff had

the RFC to perform simple, repetitive work; work with limited contact with the public, co-

workers, and supervisors; and work with low to moderate production and pace standards (Tr.

846-49).

The ALJ gave "considerable weight" to Dr. Benovitz's November 2010 opinion

(Tr. 34). However, the ALJ noted Dr. Benovitz's opinion was not the only factor used in

determining Plaintiff's RFC (Tr. 34). See 20 C.F.R. § 404.1545(a)(3) (noting the

Commissioner will assess a claimant's RFC based on all of the relevant medical and other

evidence). The ALJ also noted that Dr. Benovitz's November 2010 opinion was in response to

interrogatories asking that he provide his assessment of Plaintiff's mental health from 1994 to

the present (Tr. 34, 842).

The ALJ properly considered Dr. Benovitz's opinions and performed his duty of determining Plaintiff's RFC based on all of the evidence and addressed the proper time lines.

**D.      THE ALJ PROPERLY EXPLAINED WHY HE WAS LIMITING PLAINTIFF TO SEDENTARY WORK BASED ON DR. SCHOSHEIMS' OPINION.**

Dr. Schosheim, M.D., an orthopedic specialist, attended Plaintiff's second hearing. Dr. Schosheim had reviewed all the medical evidence and listened to Plaintiff's testimony. The ALJ had intended to excuse him without taking testimony because the Plaintiff inferred that he was disabled because he "could not stand incompetence or laziness."  This statement indicated Plaintiff considered himself to be disabled due to mental health issues rather than a physical impairment.  However, Plaintiff's representative asked Dr. Schosheim to render his opinion of Plaintiff's physical ability.  (Although the ALJ permitted Dr. Schosheim to respond to the representative's inquiry, the ALJ had not posed a hypothetical question to the doctor concerning the Plaintiff's RFC.)  Dr. Schosheim testified that Plaintiff had back surgery on June 22, 1994, but that Plaintiff did not report any debilitating back problems after he completed physical therapy.  Dr. Schosheim stated Plaintiff had severe back injuries and had instrumentation installed after the 2007 accident (Plaintiff testified he fell off a boat) and may currently have back pain secondary to his recent injuries but there were no further back surgeries until 2007.  The doctor also pointed out that after his review of the medical evidence from 1994 through 2001, there was no evidence of muscle weakness, muscle atrophy or sensory changes, and in his opinion Plaintiff would be capable of at least sedentary work during the period in question.

The ALJ gave some weight to Dr. Schosheim's opinion because he is an expert in the field of orthopedics (Tr. 30). See 20 C.F.R. § 404.1527(d)(5) (noting more weight is given an opinion of a specialist about medical issues related to his area of speciality). In giving only some weight to Dr. Schosheim's opinion, the ALJ noted Dr. Schoshiem undercut his opinion when he noted that between 1994 and 1995 Plaintiff had no muscle weakness, atrophy of his legs, or sensory changes (Tr. 30, 129). See 20 C.F.R. § 404.1527(d)(3).

The ALJ also reasoned Dr. Schoshiem's opinion was not consistent with the record as a whole. See 20 C.F.R. § 404.1527(d)(4). For example, the ALJ noted that based on Plaintiff's testimony, Plaintiff considered himself disabled due to mental impairments rather than physical impairments (Tr. 30, 60-79, 112-25). The ALJ also reasoned that Plaintiff's June 1994 surgery was successful and Plaintiff did not report any debilitating back problems after he completed physical therapy (Tr. 30, 427-29). "Musculoskeletal impairments frequently improve with time or respond to treatment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00H1.

In June 1995, Dr. Richard Bailyn, Plaintiff's orthopedist, noted Plaintiff reported continued improvement in his low back pain (Tr. 530). Plaintiff stated his pain no longer extended into his buttocks or legs and he was no longer relying on pain medication (Tr. 530). On examination, Dr. Bailyn noted Plaintiff had no spinal tenderness; his "[s]traight leg raising is negative bilaterally;" and, he had no muscle weakness or reflex asymmetry in his legs (Tr. 530). In July 2005, Dr. Bailyn noted Plaintiff "reported dramatic improvement in low back pain in association with physiotherapy" (Tr. 529). Dr. Bailyn also noted Plaintiff had an upcoming trip from Florida to Connecticut (Tr. 529).

Accordingly, substantial evidence supports the ALJ's decision to give only some weight to Dr. Schosheim's opinion.

### III.     CONCLUSION AND RECOMMENDATION

The ALJ properly considered all of the relevant evidence in assessing Plaintiff's RFC, including the objective medical findings, Plaintiff's treatment history, medical source statements, and  Plaintiff's allegations and daily activities (Tr. 28-36). Substantial evidence supports the weight the ALJ gave the opinion evidence and, in doing so, the ALJ applied the proper law.

Therefore, **it is respectfully recommended** that this case be **AFFIRMED**.

In Chambers in Ft. Myers, Florida this 15TH    day of   January, 2013.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE



Copies to:

All Parties

Chantal J. Harrington, P.A.
Office of A.U.S.A., Tampa, Florida

-23-

**Notice to Parties**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.